STATE OF NEBRASKA, APPELLANT, V. MARLIN R. MATZEN
ET AL., APPELLEES.
250 N. W. 2d 232

Filed February 9, 1977. No. 40679.

Paul L. Douglas, Attorney General, and Bernard L. Packett, for appellant.

Thomas B. Thomsen of Sidner, Svoboda, Schilke, Wiseman & Thomsen, and Edson Smith of Swarr, May, Smith & Andersen, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BOSLAUGH, J.

This case involves a controversy concerning the title to accretion land along the Missouri River in Washington County, Nebraska. The State of Nebraska as plaintiff claimed title on the theory the accretion was to Section 16, Township 17 North, Range 13 East of the

6th P.M., a section of school land granted to the State by the Enabling Act.

There is no issue concerning the title of the individual defendants except as against the State. The parties stipulated that as against all persons other than the State of Nebraska the individual defendants are the owners of the property claimed by them in their answers.

The trial court found as a matter of fact that the land in question did not accrete to Section 16 and quieted title to the land in the individual defendants. The State has appealed.

The land in dispute is a kidney-shaped island known as Matzen Island. It is separated from the land to the west by the Boyer Chute and is bordered on the east by the Missouri River.

An 1857 General Land Office map, exhibit 1, shows the Missouri River was then located east of Section 16 with four narrow lots in Section 15 lying between the west bank of the river and the east line of Section 16. An 1879 map, exhibit 2, which was based on a survey by the United States Corps of Engineers, shows that by 1879 the river had moved to the west with the west bank located near the half-section line at the north line of Section 16 and near the southeast corner of Section 16 at the south line of the section. Thus, by 1879, Section 16 had become riparian land.

The State contends that all the land between the 1857 west bank of the river and the 1879 west bank was obliterated during the westward movement of the river. The effect of such a movement of the river would be to destroy the title to the land obliterated by the movement of the river. See Winkle v. Mitera, 195 Neb. 821, 241 N. W. 2d 329. The State's theory is that as the river moved back to the east, accretion land formed along the west bank of the river.

The 1879 map, exhibit 2, shows an island near the east bank of the river on the Iowa side. In 1879 this

island covered Lots 1 and 2 and a part of Lot 3 in Section 15 and a narrow strip along the east line of the northeast quarter of Section 16. The principal issue in this case is whether the island shown on the 1879 map has been in existence continuously since 1879.

The State had the burden of proof to show by a preponderance of the evidence that the land in question was accretion to Section 16. Mitchell v. Beermann, 175 Neb. 616, 122 N. W. 2d 525. If the land in question was accretion to the island and not to Section 16, then the State can not succeed.

The State contends that the island has not existed continuously since 1879. Russell Smith, a professor of geology who was called as an expert witness by the State, testified it was his opinion that the land in question originated as a point bar which built up slowly by the deposit of silt on the inside of a meandering curve in the river.

Russell Smith testified that a strong factor in his theory was a map from an 1884 Atlas, exhibit 3, which does not show the island. However, the defendants produced another 1884 Atlas, exhibit 46, which shows an island on the Iowa side of the river opposite Section 16. This island appears to correspond generally with the island shown on the 1879 map.

The State also contends that the Boyer Chute formed sometime after the river had begun to move back to the east. Russell Smith testified it was his opinion that the Boyer Chute formed gradually, sometime between 1890 and 1910 by water draining from the land after it had been flooded by the river.

The defendants' theory of the case is that both the island and the Boyer Chute have been in existence since at least 1879. The island appears on all the maps which are in evidence except exhibit 3, the 1884 Atlas map previously discussed, and exhibit 4, an 1893 Missouri River Commission map based on an 1890 survey. The defendants suggest the island was not shown on

exhibit 4 because the map may have depicted a high water stage of the river.

The defendants' theory is also supported by an 1894 survey made by the Washington County surveyor. The notes of this survey indicate the Boyer Chute was in existence at that time and was in approximately its present location.

A comparison of the various maps which are in evidence show that the Boyer Chute has always been located within the banks of the river as shown on the 1879 map. This is a circumstance which strongly suggests the Boyer Chute has been in existence continuously since 1879 and is in fact what now remains of the 1879 channel of the river.

Stewart A. Smith, a surveyor with extensive experience with the Missouri River and as an employee of the United States Corps of Engineers, testified as an expert witness for the defendants. It was his opinion that the Boyer Chute and the island have existed continuously since 1879 and that the land in question was accretion to the island shown on the 1879 map.

The State argues that this case is very similar to Worm v. Crowell, 165 Neb. 713, 87 N. W. 2d 384. In Worm v. Crowell the question was whether the river had moved to the west and destroyed the appellee's title. This court held the evidence showed the river had moved to the west, the appellants' lands had become riparian lands, and the appellants were the owners of the accretion land formed as the river moved back to the east, except for a part thereof which the appellee had obtained by adverse possession.

The difference between this case and Worm v. Crowell, *supra,* is that the evidence in this case shows that an island has existed east of the 1879 west bank of the river since 1879, and the island has been separated from the land to the west by the Boyer Chute which is what now remains of the 1879 channel of the river. The accretion land which formed east of the is-

land as the river moved to the east was accretion to the island and not Section 16.

The factual situation in this case is somewhat similar to Burket v. Krimlofski, 167 Neb. 45, 91 N. W. 2d 57. In that case accretion land which formed to the island was held to be the property of the owner of the island.

As we view the record, the preponderance of the evidence supports the defendants' theory of the case. It is unnecessary to consider any of the other issues raised by the defendants.

The judgment of the District Court is affirmed.

AFFIRMED.